**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JEFFREY ROBERT HERMANSEN,

    Defendant-Appellant.

No. 06-1309

(D.C. No. 05-cr-94-REB-7)

(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **BALDOCK**, and **HOLMES**, Circuit Judges.[**]

On July 11, 2005, a grand jury issued a Superceding Indictment charging Defendant with possession of implements to counterfeit documents in violation of 18 U.S.C. § 1028(a)(5); possession of stolen mail in violation of 18 U.S.C. § 1708; making and possessing, and uttering counterfeit or forged securities in violation of 18 U.S.C. § 513(a); and fraud and related activity in connection with identification documents in violation of 18 U.S.C. § 1028(a)(3). Over the course of several months the parties engaged in plea

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

negotiations. During that time, Defendant twice rejected the Government's plea offer. Then, on January 25, 2006, the grand jury returned a ten-count Second Superceding Indictment, increasing the charges against Defendant and exposing him to a longer prison term. Just before the grand jury issued the Second Superceding Indictment, Defendant learned his attorney was not licensed to practice in federal court. In an attempt to gain the benefit of a previously rejected plea offer, Defendant filed a Motion to Enforce Plea Agreement Based on Ineffective Assistance of Counsel. The district court held an evidentiary hearing and subsequently issued a written order denying the motion. After the court denied Defendant's motion, he pled guilty under a new plea agreement. The court sentenced Defendant to 48 months in prison, which is 21-27 months longer than he would have received under the terms of the original plea agreement. Defendant now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. Reviewing de novo the district court's legal determinations and its factual determinations for clear error, we affirm. Smith v. Mullin, 379 F.3d 919, 929 (10th Cir. 2004).

I.

When the plea negotiations began in this case, Kerry S. Hada represented Defendant. Mr. Hada presented the Government's first plea offer to Defendant, which Defendant rejected. In early November 2005, Mr. Hada withdrew as counsel. Defendant's new attorney, J. Tyler Makepeace, filed his appearance on November 23, 2005. Mr. Makepeace began discussing with the Assistant United States Attorney (AUSA) the possibility of a second plea agreement. At a January 13, 2006, status conference, the parties represented to

2

the court that they believed they had reached a plea agreement and requested the matter be set for a change of plea hearing. The court set a change of plea hearing for January 20, 2006, in conjunction with the trial preparation conference. The court also stated that if Defendant did not plea, trial would commence on January 23, 2006.

Also on January 13, 2006, Mr. Makepeace and the AUSA met to discuss the terms of the Government's plea offer. The substance of the offer was substantially similar to the plea offer Defendant previously rejected through Mr. Hada. The AUSA emphasized to Mr. Makepeace that this was a one-time offer, and if rejected, the Government would go to trial on January 23rd. Mr. Makepeace discussed with Defendant the substance of the Government's plea offer, and conveyed to Defendant the Government's insistence this was a one-time offer.

On either January 16 or 17, 2006, Mr. Makepeace discovered he was not in good standing as a member of the Bar of the United States District Court for the District of Colorado. In 2005, the Supreme Court of Colorado suspended Mr. Makepeace for thirty days. While the Supreme Court reinstated him to practice in state court, his reinstatement to state court did not serve to reinstate him to the federal district court bar. As a result, Mr. Makepeace was prohibited from practicing in federal court. Mr. Makepeace immediately notified the AUSA and Defendant's mother who was heavily involved with the case.[1] Nevertheless, on January 18, 2006, the AUSA sent Mr. Makepeace a written copy of the

---

[1] Mr. Makepeace could not immediately notify Defendant regarding his status with the federal bar because Defendant was unable to receive phone calls at his holding facility.

Government's plea offer.

The following day, January 19, 2006, during the course of a telephone conversation with Defendant and his mother, Mr. Makepeace informed Defendant he could not practice in federal court. During the same conversation, Mr. Makepeace discussed the proposed plea offer with Defendant. Defendant expressed concerns about the length of his possible prison sentence. Unhappy with the proposed sentencing range of 21 to 27 months, Defendant instructed Mr. Makepeace to negotiate something better. Mr. Makepeace, however, advised Defendant that he could no longer represent him because he was not authorized to practice in federal court. After this conversation with Defendant and his mother, Mr. Makepeace notified the AUSA that he was having problems persuading Defendant to accept the agreement. Mr. Makepeace told the AUSA that "Mr. Hermansen wasn't getting it," and "Jeff [the Defendant] is not there yet." The AUSA testified he construed Mr. Makepeace's comments as Defendant's rejection of the Government's offer.

Because Defendant was without counsel, the court vacated the January 20, 2006 change of plea hearing and the trial preparation conference, and set a status conference for February 3, 2006. On January 24, 2006, the court appointed M. David Lindsey to represent Defendant. The very next day, a grand jury returned a ten-count Second Superceding Indictment charging Defendant with aggravated identity theft in addition to the various violations of federal law contained in the previous indictment. The new charge required imposition of a 24-month consecutive sentence to any other sentence Defendant might receive as a result of the other charges. The district court continued the February 3, 2006,

4

status hearing to February 10, 2006, at which time the district court arraigned Defendant on his most recent indictment.

Defendant subsequently brought a motion seeking to enforce the Government's plea offer based on ineffective assistance of counsel. Defendant argued that had Mr. Makepeace been able to represent him at the January 20, 2006, change of plea hearing, he would have accepted the Government's plea offer. Following an evidentiary hearing, during which both Defendant and Mr. Makepeace testified, the court denied Defendant's motion. The court concluded Defendant rejected the Government's plea offer, and in fact was not prepared to accept the Government's offer until after the grand jury returned the Second Superceding Indictment. Defendant eventually pled guilty under a new plea offer, and the court sentenced him to 48 months imprisonment. This appeal followed.

II.

Ordinarily, claims of ineffective assistance of counsel are not appropriately raised on direct appeal. See United States v. Brooks, 438 F.3d 1231,1242 (10th Cir. 2006). In certain instances, however, we will entertain an ineffective assistance of counsel claim on direct appeal, including, *inter alia*, where the record is sufficiently developed. Id. ("The primary exception for allowing appellate review of a claim of ineffective assistance of counsel on direct appeal is when there exists a sufficiently developed record."). This is such a case. To prevail on a claim for ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's performance prejudiced him such that a

5

reasonable probability exists that, but for the deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). "'Judicial scrutiny of counsel's performance must be highly deferential,' and courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McLuckie v. Abbott, 337 F.3d 1193, 1198 (10th Cir. 2003) (quoting Strickland, 466 U.S. at 689).

Defendant argues Mr. Makepeace's performance was insufficient in two respects. First, Defendant argues Mr. Makepeace failed to obtain substitute counsel for the January 20th change of plea hearing. Second, Defendant asserts Mr. Makepeace failed to have a "final conversation" with him for the purpose of reviewing and ratifying the plea agreement. Defendant argues these inactions prejudiced him because had Mr. Makepeace represented Defendant at the January 20th hearing, or secured an appropriate replacement, Defendant would have accepted the Government's plea offer and thus not been subject to the Second Superceding Indictment issued five days later. Even assuming Mr. Makepeace acted objectively unreasonable, we cannot, based on the record before us, conclude this alleged deficiency prejudiced Defendant. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").

The prejudice prong of Strickland requires a defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." Strickland, 466 U.S. at 694. In other words, to prevail on his claim, Defendant must show that but for Mr. Makepeace's actions, a reasonable probability existed that he would have accepted the Government's plea offer.

Defendant points to two pieces of evidence presented at the evidentiary hearing as proof he would have accepted the Government's plea offer had Mr. Makepeace been able to attend the January 20, 2006, hearing and had a "final conversation" concerning the plea agreement occurred. First, Defendant points to his own testimony where he stated he would have accepted the Government's plea offer and entered a plea of guilty at the January 20, 2006, hearing because he wanted to "get this behind me." Second, Defendant notes Mr. Makepeace's testimony where he testified had he been permitted to practice in federal court, he would driven to the courthouse on the morning on January 20th and tried again to persuade Defendant to accept the Government's offer. After reviewing the record, we agree with the district court's finding that Defendant presented no credible evidence he would have accepted the Government's plea offer absent Mr. Makepeace's inability to represent him at the change of plea hearing.

First, we note the district court heard Defendant's testimony at the hearing and found Defendant's claim that he wanted to accept the plea agreement unbelievable. We give deference to the district court's credibility determination as we must. See, e.g., Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985). We also note the testimony adduced at the evidentiary hearing convincingly shows Defendant expressed an interest in accepting the Government's plea offer *only after* the Second Superceding Indictment exposed him to

7

additional prison time. The record shows Mr. Makepeace discussed the substance of the Government's plea offer with Defendant on January 19th. Mr. Makepeace clearly communicated to Defendant the Government's position that this was a one time offer, and that the offer expired on January 20th. Defendant understood the general terms of the Government's offer, but was dissatisfied with the length of his possible sentence.[2] Based on his dissatisfaction, Defendant rejected the Government's offer on January 19th, and instructed Mr. Makepeace to negotiate something better. Defendant's self-serving testimony that he would have accepted the plea agreement at the January 20, 2006, hearing is undermined by the fact Defendant made no effort to communicate to the court, Mr. Makepeace, or the Government, his desire to accept the Government's offer on or before January 20, 2006. In fact, Defendant did just the opposite by rejecting the plea agreement on January 19, 2006, in the hopes of reaching a better deal.

Defendant failed to show a reasonable probability that, but for Mr. Makepeace's inability to represent him at the change of plea hearing, the result of the proceeding would

---

[2] Defendant asserts the district court erred when it found the terms of the plea offer were well known to Defendant. We find no clear error in the district court's factual finding. The evidence introduced at the evidentiary hearing clearly showed the plea offer was substantially similar to the first plea offer the Government offered through Mr. Hada, which Defendant reviewed and rejected. The evidence also showed that although Mr. Makepeace did not review the written plea agreement with Defendant line by line, he reviewed the general terms of the plea agreement with Defendant at least twice.

have been different. Accordingly, the order denying Defendant's motion to enforce the plea offer is hereby—

      AFFIRMED.

                              Entered for the Court,


                              Bobby R. Baldock
                              Circuit Judge